**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

JUDITH BERGER,

                                                  CASE NO. 3:09-cv-14157-WGY-HTS

                          Plaintiff,

v.

R.J. REYNOLDS TOBACCO COMPANY, *et al.*,

                          Defendants.

_____/

**DEFENDANT'S RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW ON ALL CLAIMS**

Defendant Philip Morris USA Inc. ("PM USA") respectfully renews its motion for judgment as a matter of law (Doc. 85) under Federal Rule of Civil Procedure 50(b). PM USA recognizes that certain of the arguments presented in this brief—particularly arguments relating to the *Engle* findings, preemption, and unavailability of punitive damages—have been previously rejected by this Court (and by the Eleventh Circuit with respect to the application of the *Engle* findings to non-intentional tort claims).[1]  However, PM USA sets forth its position with respect to those issues in this motion to ensure that they are preserved for further appellate review.  PM USA incorporates all prior briefing (including all exhibits and materials provided with such briefing) on these issues.

In the event that the Court does not enter judgment as a matter of law in PM USA's favor on all claims, PM USA submits that it is entitled to a new trial because the arguments presented herein demonstrate that the verdict is contrary to law and against the weight of the

---

[1]     *See, e.g.*, *Walker v. R.J. Reynolds Tobacco Co.*, 734 F.3d 1278 (11th Cir. 2013), *cert. denied*, No. 13-No. 13-1193 (U.S. June 9, 2014); *Waggoner v. R.J. Reynolds Tobacco Co.*, 835 F. Supp. 2d 1244 (M.D. Fla. 2011).

evidence and that the Court made erroneous legal rulings that improperly relieved Plaintiff of the burden of proving essential elements of her claims.  *See* Fed. R. Civ. P. 50(b), 59.

## ARGUMENT

"Under Rule 50, a court should render judgment as a matter of law when there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1192 (11th Cir. 2004).[2]  The post-trial standard for granting a renewed motion for judgment as a matter of law under Rule 50(b) "is precisely the same as the standard for granting the pre-submission motion [under 50(a)]."  *Chaney v. City of Orlando, Fla.*, 483 F.3d 1221, 1227 (11th Cir. 2007) (quoting 9A Wright & Miller § 2537 (2d ed. 1995)).

To overcome the motion, the nonmoving party must present substantial evidence, and any inferences the nonmoving party relies upon must be reasonable.  *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1526 (11th Cir. 1997) ("[T]here must be a substantial conflict in evidence to support a jury question."); *see also Mee Indus. v. Dow Chem. Co.*, 608 F.3d 1202, 1211 (11th Cir. 2010).  Applying these standards here, PM USA is entitled to judgment as a matter of law on all of Plaintiff's claims.

---

[2]    In diversity cases, this standard "is a matter of federal law."  *Jones v. Miles Labs., Inc.*, 887 F.2d 1576, 1578 (11th Cir. 1989).

I.   **THE *ENGLE* FINDINGS CANNOT BE USED TO PROVE ELEMENTS OF PLAINTIFF'S CLAIMS.[3]**

    A.   **Applying The *Engle* Phase I Findings To Prove Elements of Plaintiff's Claims Violated PM USA's Federal Constitutional Rights.**

This Court held that Plaintiff was not required to prove the conduct elements of any of her claims.  Instead, these elements were deemed established through the preclusive effect of the *Engle* Phase I findings.  PM USA respectfully submits that this application of preclusion violated its rights to due process and equal protection of the law.

Both United States Supreme Court precedent and centuries of common law tradition have uniformly (prior to the *Engle* progeny litigation) barred the use of preclusion unless it is certain that the issue being deemed established in the later litigation was actually decided in the prior one.  *See, e.g.*, *Fayerweather v. Ritch*, 195 U.S. 276, 297, 299, 308 (1904); *De Sollar v. Hanscome*, 158 U.S. 216, 221 (1895); *Russell v. Place*, 94 U.S. 606, 608 (1876); *Seaboard Coast Line R.R. Co. v. Indus. Contracting Co.*, 260 So. 2d 860, 864 (Fla. 4th DCA 1972).  The reason for this "actually decided" rule is not difficult to discern:  it ensures that *some* factfinder has found every element of the plaintiff's cause of action in her favor. Fundamental fairness requires no less:  without the "actually decided" rule, a defendant

---

[3]   PM USA incorporates all arguments in prior briefing of this issue.  *See, e.g.*, Defs.' Rule 16(c) Motion To Determine The Preclusive Effect Of The *Engle* Phase I Findings, *Waggoner v. R.J. Reynolds Tobacco Co.*, No. 3:09-CV-10367-J-37JBT (M.D. Fla. June 10, 2011); Defs.' Reply In Support Of Rule 16(c) Motion To Determine The Preclusive Effect Of The *Engle* Phase I Findings, *Waggoner* (M.D. Fla. Aug. 12, 2011); Defs.' Supplemental Brief On *R.J. Reynolds v. Jimmie Lee Brown*, *Waggoner* (M.D. Fla. Oct. 10, 2011); Defs.' Motion To Reconsider This Court's December 20, 2011, Order In *Waggoner v. R.J. Reynolds Tobacco Co.* In Light Of The Florida Supreme Court's Decision In *Philip Morris USA Inc. v. Douglas*, *In Re: Engle Progeny Cases*, No. 3:09-CV-10000-J-32JBT (M.D. Fla. Apr. 23, 2013); Defs.' Motion To Bifurcate Class Membership And Compensatory Liability From Punitive Liability And To Exclude Evidence Of Tortious Conduct From The Class Membership And Compensatory Phase In Light Of The *Douglas* Decision, *In Re: Engle Progeny Cases*, No. 3:09-CV-10000-J-32JBT (M.D. Fla. Apr. 27, 2013) (collectively Ex. A).

might be precluded from litigating an issue that the prior factfinder decided in *its* favor.

For these reasons, the United States Supreme Court has held that the actually-decided rule is required by due process.  *See Fayerweather*, 195 U.S. at 297, 299 (giving "unwarranted effect to a decision" by accepting as "a conclusive determination" a verdict "made without any finding of [a] fundamental fact" would violate due process); *see also Honda Motor Co. v. Oberg*, 512 U.S. 415, 430 (1994) ("abrogation of a well-established common-law protection against arbitrary deprivations of property raises a presumption" of a due process violation); *Richards v. Jefferson Cnty., Ala.*, 517 U.S. 793, 797 (1996) ("extreme applications" of preclusion "may be inconsistent with a federal right that is 'fundamental in character.'" (citation omitted)).

In the *Engle* progeny litigation, it is impossible to determine from the *Engle* verdicts whether the jury actually decided any facts pertinent to the elements of any particular class member's claims, both because of the generality of the jury's findings and because of the multitude of alternative theories pursued by the *Engle* class.  Thus, PM USA has consistently taken the position that the use of *any* of the *Engle* findings to establish the conduct elements of progeny plaintiffs' claims violates due process.

Nonetheless, the Florida Supreme Court has held that the *Engle* findings related to the plaintiffs' **strict liability and negligence** claims must be given preclusive effect in progeny cases.  *See Philip Morris USA Inc. v. Douglas*, 110 So. 3d 419, 432-35 (Fla. 2013).  And this Court has rejected the *Engle* defendants' argument that giving preclusive effect to the *Engle* findings violates due process.  *See Waggoner v. R.J. Reynolds Tobacco Co.*, 835 F. Supp. 2d 1244, 1267-78 (M.D. Fla. 2011).  PM USA respectfully disagrees with those decisions, and

preserves its position for appeal. *See* Part I.A.1, *infra*.

*Douglas* did not, however, address whether the *Engle* jury's ***fraudulent concealment and conspiracy*** findings could be given preclusive effect. And although this Court so held in *Waggoner*, it did so without the benefit of the Eleventh Circuit's decision in *Walker v. R.J. Reynolds Tobacco Co.*, 734 F.3d 1278 (11th Cir. 2013), which applied a "full faith and credit" rationale to the defendant's due process argument that has no application to progeny plaintiffs' fraudulent concealment and conspiracy claims. This Court should therefore reconsider its decision with respect to those claims in light of *Walker*. *See* Part I.A.2 *infra*.

> **1.  *Douglas*'s Unprecedented Use Of "Claim Preclusion" Does Not Remedy The Constitutional Problem With Giving Preclusive Effect To The *Engle* Findings.**

In *Douglas*, the court held that the *Engle* findings conclusively established the tortious conduct elements of every progeny plaintiff's strict liability and negligence claims—not because it could determine what specific allegations the *Engle* jury had accepted, but because what it termed "claim preclusion" resolved in each plaintiff's favor any issue that ***could*** have been decided in the prior action. 110 So. 3d at 432. Indeed, the court effectively acknowledged that the "actually decided" requirement was ***not*** satisfied: it stated that the application of that requirement would "make the Phase I findings regarding the *Engle* defendants' conduct useless in individual actions"—precisely because it was impossible to determine which specific allegations the *Engle* jury accepted or rejected. *Id.* at 433.

PM USA disagrees with *Douglas*, but recognizes that it currently constitutes controlling precedent with respect to the preclusive effect of the strict liability and negligence findings under Florida state law. PM USA continues to take—and preserve for appeal—the

position that this application of the *Engle* findings violates PM USA's federal constitutional rights to due process and equal protection. Indeed, *Douglas*'s application of claim preclusion in this context is precisely the type of "extreme application" of preclusion that violates due process, *Richards*, 517 U.S. at 797, because what *Douglas* called "claim preclusion" would not be recognized as such either at common law or by any other American jurisdiction today.

Claim preclusion is available only when there has been a ***final judgment*** that "puts an end to the cause of action," as opposed to a subset of elements of a cause of action. *Nevada v. United States*, 463 U.S. 110, 129-30 (1983) (internal quotation and citation omitted). Claim preclusion, as its name suggests, ***precludes*** further litigation of the entire ***claim***—by ***either*** party. *See Cromwell v. Cnty. of Sac*, 94 U.S. 351, 353 (1876) (a "claim, having passed into judgment, cannot again be brought into litigation between the parties in proceedings at law upon any ground whatever"); *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 874 (1984). Moreover, traditional claim preclusion has no offensive application; it is purely defensive. It has never been applied when, as here, a party seeks to prosecute a claim that has ***not*** been fully adjudicated and to preclude litigation of certain ***elements*** of that claim— the classic context for issue preclusion.

And that makes sense. When there is a final judgment that extinguishes a claim and entirely bars relitigation of that claim, it makes no difference which of the parties prevailed on specific issues that may have been litigated in the course of reaching the final judgment. The judgment itself demonstrates that the claim has been fully resolved against the losing party, and thus that there can be no further proceedings on the claim that will turn on the claim that was the subject of the prior jury's determination. In that situation, preclusion

principles can be constitutionally applied with no need to show what specific elements were actually decided in the prior litigation.

But that is hardly the situation here:  far from being precluded, Plaintiff's claims are being litigated.  Thus, this Court should properly be required to determine which issues have already been resolved by a factfinder and which issues have not yet been adjudicated.  Where there is no way of knowing whether the issue on which preclusion is sought was resolved in favor of the moving party in the prior proceeding, preclusion is unacceptable as a matter of due process.  *See Fayerweather*, 195 U.S. at 297-98.

Thus, characterizing the preclusive doctrine as "claim preclusion" does not change the ***substance*** of what occurred or resolve the due process problem.  Although "[s]tate courts are free to attach descriptive labels to litigations before them as they may choose," those labels are not binding for purposes of determining whether state court proceedings violate due process.  *Hansberry v. Lee*, 311 U.S. 32, 40, 61 S. Ct. 115 (1940).  When "tested . . . by its substance—its essential and practical operation—rather than its form or local characterization," *Air-Way Elec. Appliance Corp. v. Day*, 266 U.S. 71, 82 (1924) (internal quotation and citation omitted), it is clear that the "claim preclusion" invented by *Douglas* is issue preclusion in every meaningful way, save for the essential and constitutionally required protection of the "actually-decided" requirement.

According to *Douglas* and *Waggoner*, this arbitrary and irrational outcome is compatible with due process because the defendants were afforded an "opportunity to be heard" in *Engle*.  *Douglas*, 110 So. 3d at 431; *Waggoner*, 835 F. Supp. at 1279.  But this addresses the wrong question; it is the trial in ***this*** case that threatens to deprive PM USA of

its property, and it is indisputable that the preclusion ruling deprived PM USA of a full and fair opportunity to litigate this case.  That result can comport with due process only if the preclusion ruling was lawful.  Indeed, in virtually *every* case in which preclusion is rejected, the party opposing preclusion had a full opportunity to litigate in the prior proceeding; yet that is never deemed a basis for applying preclusion absent a reasonable certainty that the issue being precluded was previously decided against the party.

Moreover, an opportunity to be heard, no matter how extensive, is constitutionally meaningless unless the hearing culminates in an ascertainable decision.  Due process guarantees a party not merely the right to present his case, but also the right to "have its merits fairly judged."  *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433 (1982); *see also Fayerweather*, 195 U.S. at 299 (due process prohibits application of preclusion unless parties "had an opportunity to present" the issue ***and*** "the question was decided" in the prior proceeding).  For defendants, this includes the right to contest all elements of a claim—to present "every available defense," *Philip Morris USA v. Williams*, 549 U.S. 346, 353 (2007) (internal quotation marks omitted)—and to obtain a decision on every claim or defense that could potentially affect the imposition of liability.  It is therefore "a proposition which hardly seems to need explication that a hearing which excludes consideration of an ***element essential***" to a claim cannot comport with due process.  *Bell v. Burson*, 402 U.S. 535, 542 (1971) (emphasis added).

The Florida Supreme Court's analysis violates due process for a second, related reason:  in addition to relieving progeny plaintiffs of the burden of proving that defendants in *Engle* cases engaged in tortious conduct, the court relieved plaintiffs of the burden of proving

legal causation on their strict liability and negligence claims.  It is well established in Florida law that legal causation is a necessary element of every tort claim.  *Engle v. Liggett Grp., Inc.*, 945 So. 2d 1246, 1263, 1268 (Fla. 2006).  The *Douglas* court implicitly recognized that the generality of the Phase I findings makes it impossible for a progeny jury to determine whether the plaintiff's injuries were legally caused by a **defect** or **act of negligence**, as opposed to merely being a consequence of cigarette smoking generally.  *See* 110 So. 3d. at 429.  The court attempted to solve that problem by holding that where a plaintiff can prove that her alleged injuries resulted from "addiction to the *Engle* defendants' cigarettes containing nicotine," then "injury as a result of the *Engle* defendants' conduct [would be] **assumed** based on the Phase I common liability findings."  *Id.* (emphasis added).

In effect, the *Douglas* court created a conclusive, irrebuttable presumption that if a person developed a smoking-related disease as a result of addiction to cigarettes, that disease was necessarily caused by the manufacturer's negligence in designing or marketing the cigarettes or by a defect in the cigarettes the plaintiff smoked.  Indulging a conclusive presumption that every *Engle*-qualifying disease contracted by every smoker who is found to be an *Engle* class member was necessarily caused by the negligence of the cigarette manufacturer or a defect in the cigarettes that individual smoked violates both federal and Florida constitutional protections against arbitrary irrebuttable presumptions.  *See, e.g.*, *Burson*, 402 U.S. 535 (finding Georgia law that conclusively presumed an uninsured motorist who was involved in an accident was at fault violated due process); *Pub. Health Trust of Dade County v. Valcin*, 507 So. 2d 596, 599 (Fla. 1987) (striking down a lower court's "conclusive presumption establishing liability when the records [of a surgical operation] are

shown to be missing due to the deliberate acts or omissions of the hospital or employee doctor," because "it violates due process in its failure to provide the adverse party any opportunity to rebut the presumption of negligence").

Because it is impossible to know the basis for the Phase I findings, it is impossible for PM USA in an *Engle* progeny case to rebut the presumptions created by the Florida Supreme Court's decisions in *Engle* and *Douglas*—not only that the *Engle* jury found in Plaintiff's favor on all allegations of tortious misconduct, but that any injury suffered by Ms. Berger that could be smoking-related was necessarily caused by PM USA's negligence or by a defect in PM USA's products. Thus, applying the *Engle* Phase I findings as conclusive presumptions to relieve Plaintiff of the constitutionally imposed burden to prove those essential elements of her individual claims in this case—and to deny PM USA an opportunity to rebut those presumptions based on the particular facts underlying Plaintiff's claims in this case—violates PM USA's due process rights.

Relieving class members of a burden that is imposed on every other Florida tort plaintiff violates due process. *See, e.g.*, *Lindsey v. Normet*, 405 U.S. 56, 66 (1972); *Sacred Heart Health Sys. v. Humana Military Healthcare Servs.*, 601 F.3d 1159, 1176 (11th Cir. 2010) ("[D]ue process . . . prevents the use of class actions from abridging the substantive rights of any party."); *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1020 (7th Cir. 2002); *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 345 (4th Cir. 1998); *cf. Philip Morris USA Inc. v. Scott*, 131 S. Ct. 1, 3 (2010) (Scalia, J., in chambers) (state court decision that "eliminated any need for plaintiffs [in a class action] to prove, and denied any opportunity for [defendants] to contest," the element of reliance in a fraud claim would give

rise to due process concerns).[4]

## 2. Neither *Douglas* Nor *Walker* Addresses The Preclusive Effect Of The Fraudulent Concealment And Conspiracy Findings.

In *Walker*, the Eleventh Circuit took a different tack than *Douglas* in rejecting the defendant's due process argument. There, the juries in two *Engle* progeny cases that were consolidated for appeal had found in favor of the plaintiffs on their **non**-intentional tort claims based in part on the binding effect of the *Engle* findings. 734 F.3d at 1286. The Eleventh Circuit held that the use of the *Engle* findings to establish the conduct elements of the strict liability and negligence claims did not violate due process. *Id.* at 1280, 1287. It acknowledged that "the proof submitted to the [*Engle*] jury included both general and brand-specific defects." *Id.* at 1287. But it construed the Florida Supreme Court's "decision in *Engle*, as interpreted in *Douglas*," to "conclude[] that the jury found only issues of common liability," "not brand specific defects." *Id.* at 1287-88. According to the court, "*Engle*, as interpreted in *Douglas*," found that the *Engle* jury had decided that **all** cigarettes sold by the defendants were defective and negligently designed. *See id.* at 1287.[5] The court then held that it was required to "giv[e] full faith and credit to th[at] decision." *Id.*

---

[4]      In addition, any conclusion that Plaintiff may use the *Engle* findings to remove or reduce her burden to prove the conduct elements of her claims because *Engle* was a class action or because of any other unique element of the *Engle* litigation would constitute a violation of the Equal Protection Clause. *See* U.S. CONST. amend. XIV § 1.

[5]      PM USA respectfully disagrees with *Walker*'s premise that the Florida Supreme Court determined that the *Engle* findings were based on a theory that all cigarettes are defective. PM USA reads *Douglas* to hold exactly the opposite:  it stated that applying the "actually decided" requirement for issue preclusion "would effectively make the [*Engle*] findings . . . useless in individual actions." 110 So. 3d at 433. This recognition—that it is impossible to discern what the *Engle* jury actually decided—led *Douglas* to create its novel

*Walker*'s holding does not govern the fraudulent concealment and conspiracy findings.  First, those findings were not before the Court because the *Walker* defendant prevailed on the intentional tort claims.  *See id.* at 1286.  Nor were they before the Florida Supreme Court in *Douglas*—the case to which *Walker* purported to defer—for the same reason.  *See* 110 So. 3d at 425.  Thus, neither *Walker* nor *Douglas* held that the *Engle* findings on concealment and conspiracy are entitled to preclusive effect, let alone that giving them preclusive effect would be consistent with the defendants' due process rights.  Indeed, because neither *Walker* nor *Douglas* purported to interpret the *Engle* jury's findings on concealment and conspiracy, there is no finding of "*Engle*, as interpreted by *Douglas*," on the intentional tort claims to which the court could have given full faith and credit.

Moreover, *Walker*'s rationale—that "*Engle*, as interpreted by *Douglas*," decided only issues common to the entire class and thus concluded that the *Engle* jury found that all cigarettes are defective because of their addictiveness and disease-causing qualities, 734 F.3d at 1287—has no application to the concealment and conspiracy findings, either by its express terms or in principle.  The distinction between the defect/negligence findings and the concealment/conspiracy findings is critical.  With respect to the former, the *Engle* class put forward, in addition to some narrower claims, a single, overarching thesis that was common to all cigarettes and therefore all class members:  that cigarettes are defective because they are addictive and cause disease.  If the *Engle* jury indeed credited this allegation, the "actually decided" test for issue preclusion would be satisfied with respect to all progeny

---

version of "claim" preclusion under which the defendants could not contest in ongoing litigation any issues that ***might*** have been litigated and determined in *Engle*.

plaintiffs' non-intentional tort claims, and the application of preclusion to the conduct elements of those claims would not violate due process.

By contrast, even if the *Engle* jury decided only issues common to the entire class, that would disclose relatively little about the fraudulent concealment and conspiracy findings. Both the *Engle* class's allegations and the trial court's instructions permitted the jury to find the defendants liable for fraudulent concealment based on particular **statements** by the defendants that were misleading because of their concealment of material information.  *See, e.g.*, *Engle* Trial Tr. at 3955 (class counsel stating that the concealment claim is based on "thousands upon thousands of **statements** about [cigarettes], [and] the relationship of smoking to disease over periods of years" (emphasis added)); *see also id.* at 37571-73 (instructing the jury on the elements of fraud by concealment) (Ex. B).  There were a number of distinct categories of statements presented to the *Engle* jury that were alleged to have been deceptive because of their failure to disclose material information, and that were presumably directed at all smokers and therefore common to all class members.

Only two categories need be mentioned here to make the point:   (1) industry statements expressly addressed to smoking-and-health issues; and (2) advertisements that depicted healthy smokers and were thereby alleged to have fraudulently concealed the dangers and addictiveness of smoking.  The *Engle* jury may, for example, have accepted the class's allegation that the defendants' express public statements fraudulently concealed what the companies knew about the dangers of smoking, but rejected the class's allegation that the defendants' advertisements were fraudulent in failing to disclose health information.  On the other hand, if a jury were to find that the plaintiff relied on PM USA's advertisements alone

and never saw the public statements, then the *Engle* jury's fraudulent concealment finding would simply have no application to the plaintiff's claims, and any finding of concealment made by this jury would have been based on acts that the *Engle* jury did ***not*** find to be fraudulent.[6]

Put another way, the hypothesis undergirding *Walker*—that *Douglas* held that the *Engle* jury decided only issues common to all class members—does not solve the ambiguity in the fraudulent concealment and conspiracy verdicts.  Thus, the use of preclusion in this case would result in liability for concealment and conspiracy despite the very real possibility that no factfinder has ever found that an act of concealment pertinent to Ms. Berger was fraudulent.  Due process does not permit the use of preclusion under these circumstances.

### B.  Plaintiff Waived Her Right To Rely On The *Engle* Findings.

The Florida Supreme Court's opinion in *Douglas* makes clear as a matter of Florida law that PM USA's tortious conduct is established by the *Engle* findings for purposes of compensatory liability issues, and that evidence of alleged tortious conduct is not relevant to any issues other than punitive damages.  *See Douglas*, 110 So. 3d at 439 (holding that, in Phase I of the *Engle* trial, "the conduct elements of the class's claims [were] established" for purposes of compensatory liability in progeny trials).  *Douglas* explained that "the Phase I verdict against the *Engle* defendants resolved ***all*** elements of the claims ***that had anything to do with the . . . defendants' cigarettes or their conduct.***"  *Id.* at 432 (emphasis added).

---

[6] As set forth in Defendant's Renewed Motion to Judgment as a Matter of Law on Plaintiff's Fraudulent Concealment and Conspiracy Claims (filed contemporaneously herewith), in this case Plaintiff cannot meet her burden under either theory.

The fundamental purpose of preclusion law is to "bar[ ] relitigation" of the precluded proposition and thereby prevent repetitious litigation. *M.C.G. v. Hillsborough Cnty. Sch. Bd.*, 927 So. 2d 224, 226-27 (Fla. 2d DCA 2006); 18 Wright, Miller & Cooper, FEDERAL PRACTICE & PROCEDURE § 4403 (2d ed. 2008) (collecting cases). Introducing evidence in an attempt to prove tortious conduct is fundamentally inconsistent with invoking preclusion principles. *See Douglas*, 110 So. 3d at 432 (stating that "individual damages actions [by former *Engle* class members] would not revisit the aspects of the *Engle* claims resolved by the Phase I findings").

Nevertheless, at trial, over PM USA's objection, Plaintiff introduced extensive evidence concerning the alleged tortious conduct of PM USA and other tobacco companies, most of which had nothing to do with Ms. Berger. *See, e.g.*, Sept. 3, 2014 Trial Tr. at 592-93 (Dr. Proctor discussing alleged youth marketing) (Ex. C). Thus, the Court allowed Plaintiff to introduce wide-ranging evidence of allegedly tortious conduct, while at the same time relieving Plaintiff of her burden to prove the conduct elements of her claims through the use of the Phase I findings. Permitting Plaintiff to have it both ways was gravely prejudicial. And by introducing this evidence, Plaintiff waived her right to rely on the *Engle* findings. As a result, she has failed to introduce sufficient evidence to support her claims.

## II.   PLAINTIFF'S EVIDENCE IS INSUFFICIENT TO SUPPORT HER CLAIMS.

*Strict Liability*.  To prevail on her strict liability claim, Plaintiff had to prove that (1) she used a product manufactured by PM USA that was defective and unreasonably dangerous; (2) PM USA was engaged in the business of selling the product in question; (3) the product was expected to and did reach Plaintiff without substantial change in the

condition in which it was sold; and (4) the product's defect proximately caused Plaintiff's injuries. *See West v. Caterpillar Tractor Co.*, 336 So. 2d 80, 87 (Fla. 1976). Plaintiff failed to prove these elements. Specifically, she failed to introduce any evidence (1) identifying a defect in PM USA's cigarettes that she smoked; or (2) demonstrating that such a defect proximately caused her injuries. Thus, PM USA is entitled to judgment as a matter of law on Plaintiff's strict liability claim.

*Negligence*. To prove her negligence claim, Plaintiff had to establish (1) the existence of a legal duty owed to her by PM USA to provide a reasonably safe product; (2) a breach of that duty by PM USA; (3) injury to Plaintiff legally caused by the breach; and (4) damages resulting from the injury. *See Meyers v. City of Jacksonville*, 754 So. 2d 198, 202 (Fla. 1st DCA 2000). Plaintiff failed to adduce evidence sufficient to prove any of these elements. No reasonable jury could conclude on this record that PM USA (1) engaged in conduct that rendered its cigarettes not reasonably safe; (2) had a duty to warn of some specific hazard that was not known by Plaintiff; (3) breached that or any other duty; (4) acted unreasonably or failed to provide warnings that PM USA had a duty to provide; or (5) engaged in a negligent act or omission that proximately caused Plaintiff's injuries.

### *Fraud by Concealment and Conspiracy to Commit Fraud by Concealment*.

Plaintiff failed to prove critical elements of her claims for fraudulent concealment and conspiracy. To prevail on her claim for fraudulent concealment against PM USA, Plaintiff had to produce enough evidence for a reasonable jury to find that PM USA (1) had a duty to make material disclosures; (2) suppressed or omitted a material fact after May 5, 1982; (3) had knowledge of the suppression or omission; (4) intended to induce Plaintiff to act

based on the suppression or omission; and (5) caused injury to Plaintiff by actions taken (or not taken) in reasonable reliance on the suppression or omission after May 5, 1982.  *See* 27 Fla. Jur. 2d, *Fraud and Deceit* § 51; *see also, e.g.*, *Greenberg v. Miami Children's Hosp. Research Inst., Inc.*, 264 F. Supp. 2d 1064, 1073 (S.D. Fla. 2003).  As set forth in Defendant's Renewed Motion to Judgment as a Matter of Law on Plaintiff's Fraudulent Concealment and Conspiracy Claims (filed contemporaneously herewith), Plaintiff failed to introduce any evidence from which a reasonable jury could conclude that she relied to her detriment on any statement or omission by PM USA—let alone any statement or omission made after May 5, 1982—that concealed information about the health risks or potentially addictive nature of cigarettes, and that, but for such an act of concealment, she would have avoided her injuries.  *See, e.g.*, *Humana, Inc. v. Castillo*, 728 So. 2d 261, 265 (Fla. 2d DCA 1999).

PM USA is also entitled to judgment as a matter of law on Plaintiff's conspiracy claim because (1) the claim is entirely derivative of her failed claim for fraudulent concealment; (2) the *Engle* findings do not establish the elements of Plaintiff's claim; and (3) Plaintiff failed to introduce any evidence that she relied to her detriment on a statement omitting material information made pursuant to, and in furtherance of, a conspiratorial agreement within the statutory repose period (or at any time), let alone that such a statement or omission proximately caused her injuries.

## III.    PLAINTIFF'S CLAIMS ARE BARRED TO THE EXTENT THEY RELY ON THEORIES OF LIABILITY THAT ARE PREEMPTED BY FEDERAL LAW.

The Federal Cigarette Labeling and Advertising Act ("Labeling Act"), 15 U.S.C. §§ 1331 *et seq.*, preempts liability based on theories that PM USA concealed, or failed to

sufficiently disclose, information about the dangers of smoking after July 1, 1969. *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 524 (1992); *see also Allgood v. R.J. Reynolds Tobacco Co.*, 80 F.3d 168, 171 (5th Cir. 1996). The Labeling Act also preempts liability based upon theories that PM USA gave a "false impression" of safety or reduced the impact of the Act's warnings after July 1, 1969. *See Cipollone*, 505 U.S. at 527. And it preempts state tort law duties that would make PM USA liable for marketing products specifically toward particular groups, such as youth, women, and minorities, after July 1, 1969. *See, e.g., In re Tobacco Cases II*, 163 P.3d 106, 117 (Cal. 2007), *cert. denied sub nom.*, *Daniels v. Philip Morris USA Inc.*, 128 S. Ct. 1649 (2008); *Brown v. Philip Morris Inc.*, 250 F.3d 789, 798 (3d Cir. 2001). Despite this, Plaintiff introduced evidence relating to post-1969 advertising and labeling. *See, e.g.*, Sept. 4, 2014 Trial Tr. at 860 (Dr. Proctor discussing spending on advertising post-1969) (Ex. C). Plaintiff's claims are barred to the extent they were predicated on that evidence.

In addition, any theory that PM USA could be held liable for continuing to manufacture cigarettes despite the dangers associated with smoking is barred by the doctrine of conflict preemption. *See, e.g., Jeter ex rel. Smith v. Brown & Williamson Tobacco Corp.*, 294 F. Supp. 2d 681, 685 (W.D. Pa. 2003); *Cruz Vargas v. R.J. Reynolds Tobacco Co.*, 218 F. Supp. 2d 109, 118 (D.P.R. 2002). The doctrine of conflict preemption precludes state-law tort claims that stand "as an obstacle to the accomplishment and execution of . . . important . . . federal objectives." *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 881 (2000) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). One such important federal objective is Congress's decision to foreclose the removal of tobacco products from the market despite

their known health risks and addictive properties.  *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 137 (2000).  Here, Plaintiff improperly sought to establish PM USA's liability based on the inherent dangers of cigarettes, without proving the elements of her strict liability and negligence claims through evidence of defect, negligence, and legal causation. Such means of establishing liability are barred under conflict preemption principles.

## IV.   PLAINTIFF IS NOT ENTITLED TO SEEK OR OBTAIN PUNITIVE DAMAGES.

PM USA is entitled to judgment as a matter of law on Plaintiff's request for punitive damages on her fraudulent concealment and conspiracy claims because neither the *Engle* Phase I findings nor the additional evidence presented at trial (either alone or in combination with the findings) could support an award of punitive damages under Florida law.

### A.   Plaintiff Cannot Use The *Engle* Phase I Findings To Establish Punitive Damages Liability Under Florida Law.

Even if—over PM USA's objections—Plaintiff can use the *Engle* Phase I findings to prove compensatory liability, the findings cannot be used to prove, or provide a basis for awarding, punitive damages.  This is so for several independently sufficient reasons.

*First*, allowing Plaintiff to obtain punitive damages based on the Phase I findings conflicts with the Florida Supreme Court's decision to vacate the Phase I jury's finding of punitive liability.  *See Engle*, 945 So. 2d at 1254-55.  The Florida Supreme Court made clear that the Phase I jury's findings relating to compensatory liability did not establish a right to recover punitive damages for any *Engle* class member.  *Id.* at 1263 ("[T]he Phase I jury did not determine whether the defendants were liable to anyone.  It was therefore error for the Phase I jury to consider whether [defendants were] liable for punitive damages.").  Rather,

punitive liability must "be based upon the facts and circumstances of the defendant's conduct and the harm to the plaintiff." *Id.* at 1265.

*Second*, the *Engle* jury's findings were made under a standard of proof lower than the one required to obtain punitive damages. *See Grogan v. Garner*, 498 U.S. 279, 284-85 (1991) (where a finding was made based on one standard, it cannot be given preclusive effect in a subsequent proceeding to which a higher burden of proof applies); *In re Yanks*, 931 F.2d 42, 43 n.1 (11th Cir. 1991) ("[T]his principle of collateral estoppel dealing with differences in the burdens of persuasion must be included, if it was not impliedly before, in our list of collateral estoppel requirements . . . ."). The Phase I findings related to the *Engle* jury's determination of compensatory liability were made under the more lenient "greater weight of the evidence" standard, *see* June 28, 1999 *Engle* Trial Tr. at 37578-79 (Ex. B), not the "clear and convincing evidence" standard required to obtain punitive damages, § 768.725, Fla. Stat.

*Third*, none of the Phase I findings provides a basis for finding that PM USA wantonly or recklessly disregarded Ms. Berger's safety or was consciously indifferent to the possible consequences of their conduct. *See* Fla. Std. Jury Instr. (Civ.) PD 1*a* (applicable to pre-1999 causes of action); § 768.725, Fla. Stat. While Plaintiff's claims for concealment and conspiracy to conceal have a state-of-mind requirement, under Florida law the findings with respect to those claims are insufficient on their own to establish that punitive damages are warranted. *See Lancer Arabians, Inc. v. Beech Aircraft Corp.*, 723 F. Supp. 1444, 1447 (M.D. Fla. 1989) ("[I]ntentional torts do not *ipso facto* give rise to punitive damages.").

*Fourth*, the *Engle* findings may have been based at least in part on conduct that did not cause Ms. Berger's alleged smoking-related injury. Thus, taking the findings into

consideration to any extent in determining punitive damages would violate the Supreme Court's holdings in *Philip Morris USA v. Williams*, 549 U.S. 346, 353 (2007), and *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408, 421-22 (2003), that punitive damages may be based only on the conduct that harmed the plaintiff, and that a party may not be punished for harm to others. Under *Williams*, a court is obligated as a matter of due process to protect against the risk that a defendant will be punished for causing injury to nonparties. That is obviously all the more true when the conduct for which punishment is sought may not have harmed the plaintiff at all.[7] Indeed, the Supreme Court went one step further and held that where there is a ***risk*** of jury confusion, a court ***must*** protect against that risk. *Williams*, 549 U.S. at 357. *Williams* thus made clear that courts may not adopt trial procedures that create even a risk that the defendant will be subject to punitive damages for conduct that did not cause the injury at issue in the case.

That is precisely the risk PM USA faces here, given the presentation to the jury of the Phase I findings. Nothing in the Phase I findings limits them to specific conduct of PM USA or to the specific injury of any ***individual*** plaintiff. The Phase I findings were inherently general and of broad application. Thus, allowing the jury to award punitive damages based on the Phase I findings would create an inescapable risk that punitive damages would be

---

[7]     Because the U.S. Supreme Court decided *Williams* after the Florida Supreme Court decided *Engle*, it falls to this Court to take *Williams* into account in construing *Engle* and the Phase I findings. *See, e.g.*, *Wagner v. Baron*, 64 So. 2d 267, 267 (Fla. 1953) (preclusion inapplicable in the face of an intervening change in law); *see also, e.g.*, *Comm'r v. Sunnen*, 333 U.S. 591, 600 (1948) ("a modification or growth in legal principles as enunciated in intervening decisions of this Court may also effect a significant change in the situation" so as to render collateral estoppel inapplicable); *Brock v. Williams Enters. of Ga., Inc.*, 832 F.2d 567, 574 (11th Cir. 1987) ("Collateral estoppel is a discretionary doctrine that has no application where there has been an intervening change in legal principles.").

imposed for conduct that may have harmed other *Engle* class members, but did not cause the injury to Ms. Berger—precisely the result due process forbids.

*Finally*, the Phase I findings do not establish that a **managing agent, executive, or high ranking official**, acting with the mental state required for an award of punitive damages, undertook the conduct that resulted in the harm, s*ee* Fla. Std. Jury Instr. (Civ.) PD 1*b* (applicable to pre-1999 causes of action), because the Phase I jury was required to find only that a defendant's employee of unknown status engaged in unspecified tortious conduct. This finding cannot sustain a claim for punitive damages.  *See Estate of Despain v. Avante Grp., Inc.*, 900 So. 2d 637, 640-41 (Fla. 5th DCA 2005).

### B.   Plaintiff Cannot Use Independent Evidence—Either By Itself Or In Combination With The Findings—To Establish Punitive Damages Liability.

Plaintiff cannot use independent evidence—either by itself or in combination with the *Engle* findings—to prove the appropriateness of punitive damages.

*First*, even if Plaintiff could otherwise rely on independent evidence, she failed to present evidence from which a reasonable jury could conclude, under the governing clear and convincing evidence standard of proof, that PM USA engaged in conduct that was tortious and that legally caused the injury to Plaintiff; indeed, she did not even identify any specific act or omission or act of concealment that proximately caused her injury.  Nor did Plaintiff provide evidence that any such act or omission was undertaken by a senior official of PM USA with the mental state necessary to sustain an award of punitive damages.  The multiple "internal company documents" introduced at trial did not suffice, because Plaintiff

did not demonstrate that the documents have any connection to her.[8]   Moreover, Plaintiff introduced no evidence that PM USA's cigarettes presented hazards beyond those inherent in cigarettes, and there is no dispute that since 1966, every pack of cigarettes Plaintiff smoked contained a warning mandated by the Labeling Act.  *See, e.g.*, *Am. Cyanamid Co. v. Roy*, 498 So. 2d 859 (Fla. 1987) (finding no basis for punitive damages where manufacturer acted in accordance with government safety standards).

*Second*, Plaintiff cannot rely on independent proof to establish that punitive damages are warranted.  Florida law and due process require that a punitive damages award be based upon the same conduct as a compensatory damages award.  *State Farm*, 538 U.S. at 422 (conduct "independent from the acts upon which liability was premised, may not serve as the basis for punitive damages"); *see also W.R. Grace & Co. v. Waters*, 638 So. 2d 502, 503 (Fla. 1994); *Ault v. Lohr*, 538 So. 2d 454, 456 (Fla. 1989).   Because any compensatory damages award would be based in large part upon the Phase I findings, and there would be no way to know what conduct was found to be tortious by the *Engle* jury, it is impossible to ensure that punitive damages would be imposed for the same conduct that underlies any compensatory damages liability.  *See, e.g.*, *State Farm*, 538 U.S. at 422, 426; *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 580 (1996).[9]

---

[8]      Nor may Plaintiff rely on *Martin* to argue that the jury can infer reliance for purposes of punitive damages.  Not only is *Martin* an outlier decision, but its holding was limited to the claim for compensatory liability, which is governed by a lower standard of proof (preponderance) than punitive liability (clear and convincing).  *Compare R.J. Reynolds Tobacco Co. v. Martin*, 53 So. 3d 1060, 1069 (Fla. 1st DCA 2010), *with* § 768.725, Fla. Stat. An inference by definition does not constitute clear and convincing proof.

[9]      In *Martin*, the appellant did not raise, and the First District Court of Appeal did not specifically address, the argument that punitive damages could not be based on a

*Finally*, Plaintiff cannot rely on a combination of independent proof and the *Engle* findings for all of the reasons set forth above outlining why neither independent proof nor the findings can be used.  In addition, awarding punitive damages based upon a combination of the Phase I findings and the additional evidence presented at trial would create a reexamination problem under the Seventh Amendment of the United States Constitution as well as federal and state due process.  The U.S. Supreme Court held in *Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S. 494, 500 (1931), that due process and the constitutional right to a jury trial prohibit separate juries from adjudicating different parts of a single case unless an issue is "so distinct and separable from the others that a trial of it alone may be had without injustice."  *Gasoline Products* recognized that separately resolving factually "interwoven" issues would often be impossible "without confusion and uncertainty, which would amount to a denial of a fair trial."  *Id.*; *see also In re Plywood Antitrust Litig.*, 655 F.2d 627, 636 (5th Cir. 1981) ("[I]f separate juries are allowed to pass on issues involving overlapping legal and factual questions the verdicts rendered by each jury could be inconsistent." (citation omitted)).  These concerns are acute here, given that the evidence presented by Plaintiff regarding punitive damages involved many of the same issues presented to the jury in Phase I of the *Engle* trial.  The compensatory and punitive damages liability Plaintiff seeks to impose here would likely rest on the findings of two different juries

---

combination of the *Engle* Phase I findings and evidence presented at trial.  Rather, the court simply held that the plaintiff in that case had presented "sufficient evidence independent of the *Engle* findings to allow the jury to find RJR guilty of intentional misconduct or gross negligence."  53 So. 3d at 1070.

(this jury and the *Engle* jury) that disagree about the same issues.  Due process and the right to a jury trial forbid that outcome.

## CONCLUSION

PM USA respectfully requests that the Court enter judgment as a matter of law in its favor on all of Plaintiff's claims.

Dated:  October 17, 2014

Respectfully submitted,

*s/ M. Sean Laane*
Mark J. Heise
Florida Bar No.: 771090
E-mail: mheise@bsfllp.com
BOIES, SCHILLER & FLEXNER LLP
100 Southeast Second Street, Suite 2800
Miami, Florida 33131
Tel: 305-539-8400

Keri L. Arnold
Florida Bar No. 88936
E-mail: Keri.Arnold@aporter.com
ARNOLD & PORTER LLP
399 Park Avenue
New York, NY 10022-4690
Telephone: (212) 715-1032

M. Sean Laane
Florida Bar No. 89112
E-mail: sean.laane@aporter.com
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, DC  20004-1206
Telephone: (202) 942-5000

Robert D. Homolka*
E-mail:  rhomolka@shb.com
SHOOK, HARDY & BACON, L.L.P.
2555 Grand Boulevard
Kansas City, MO  64108

Telephone: (816) 474-6550
Facsimile: (816) 421-5547
* *Admitted Pro Hac Vice*

**Attorneys for Defendant**
**Philip Morris USA Inc.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of October, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will deliver the document to all counsel of record.

By: /s/  Michael S. Tye
*Attorney for Philip Morris USA Inc.*