UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

Judith Berger,

    Plaintiff,

v.                                   CASE NO. 3:09-CV-14157

Philip Morris USA, Inc.,

    Defendant.

## MEMORANDUM & ORDER

Carr, D.J.[1]

This is an "*Engle*-progeny" tobacco product liability case, in which plaintiff Judith Berger sued defendant Philip Morris USA, Inc. (PMUSA) for injuries allegedly resulting from PMUSA's tortious conduct. This opinion assumes familiarity with the procedural history of this and other *Engle*-progeny actions.[2]

---

[1]    Senior U.S. District Judge, N.D. Ohio, sitting by designation.

[2]    I refer to the cases filed pursuant to and following the Florida Supreme Court's opinion in *Engle v. Liggett Group, Inc*. 945 So. 2d 1246 (Fla. 2006), as "*Engle*-progeny cases." The Court there decertified a statewide class of smokers and their survivors, but allowed members of the decertified class one year, referred to as "the *Engle* savings period," *id. at* 1277, in which to file individual lawsuits. For a detailed history of the *Engle* litigation, *see Brown v. R.J. Reynolds Tobacco Co.*, 611 F.3d 1324, 1326-29 (11th Cir. 2010), and *Waggoner v. R.J. Reynolds Tobacco Co.*, 835 F. Supp. 2d 1244 (M.D. Fla. 2011).

A predicate issue in *Engle*-progeny litigation is whether the plaintiff can prove that she was addicted to cigarettes containing nicotine. That is the first step in proving *Engle* class membership. Class membership is a *sine qua non* of entitlement to the *Engle* factual findings that make recovery in *Engle*-progeny cases possible. *See Philip Morris USA, Inc. v. Douglas*, 110 So. 3d 419, 430 (Fla.), *cert. denied*, — U.S. —, 134 S. Ct. 332 (U.S. 2013); *Engle, supra*, 945 So.2d at 1277.

Until recently, federal and state courts have refrained from instructing the jury on the elements of proof of being "addicted."

I write this opinion for two reasons, namely, to: 1) explain for the record why I decided not to give a full "addicted" charge in this case and in a case I tried earlier, *Starbuck v. R.J. Reynolds Tobacco Co.*, No. 3:09-cv-13250 (M.D. Fla.) ("Starbuck"); and 2) put lawyers on notice of my present intent to give an "addicted" charge in any subsequent *Engle*-progeny trial assigned to me.

**Discussion**

**A. Failing to Instruct on Addicted in *Starbuck* and *Berger***

In my first experience trying an *Engle*-progeny case, I raised the issue of a charge on the issue of addiction.[3] While reviewing proposals for my initial charge,[4] I noted that plaintiff's having been addicted "is a core issue in the case, and I'm troubled simply leaving [the jurors] uninstructed on what the law calls 'addiction.'" *Starbuck, supra,* Trial Tr. at 29-35, ECF No. 108. In response, counsel for all parties told me that no *Engle*-progeny federal or state trial court had attempted to

---

[3] I have imprecisely referred to a charge on "addiction" in my discussions with counsel in *Starbuck* and this case. The precise term under *Engle* is, of course, "addicted."

[4] It is my practice to charge the jury before opening statements on the jurors' duties, what constitutes evidence, and the elements of the claims and defenses. I make clear that, in the event of variation between the initial and the final charges, the final charge controls the deliberations.

2

include a definition of addiction in its jury charge. *Id.* On finding no widely accepted definition of the terms addicted or addiction, particularly as they relate to nicotine, I decided not to give an addiction instruction in *Starbuck*. *See* Court's Final Instructions Jury, ECF No. 104.[5]

Before trial in this case, I once again expressed my grave concern about leaving such a significant term undefined. I directed the parties to brief the issue. *See Berger v. R.J. Reynolds Tobacco Co.*, No. 3:09-cv-14157, Hr'g Tr. at 17-20, ECF No. 70; Order, ECF No. 28. PMUSA's memoranda urged me not to give an addicted instruction. In the alternative, PMUSA asked me simply to "tell the jury that there is no definition of the term 'addiction' applicable to this case." Def.'s Mem. Law Opp. Instructing Jury Def. Addiction, ECF No. 40.

In contrast, counsel for Mrs. Berger asked, in order of preference, that I give an instruction based on definitions from either the National Institute on Drug Abuse or Merriam-Webster's Dictionary. If I found neither appropriate, plaintiff asked me to provide no definition. *See* Pl.'s Submission Regarding Def. Term Addiction, ECF No. 41.

Finding neither submission especially helpful and drawing on a variety of sources, I proposed, as trial was about to begin, giving the jurors both a definition and list of "factors." Trial Tr. at 4-7, ECF No. 74; Trial Tr. at 360, ECF No. 102.[6] I reiterated my belief that, regardless of the failure of the Florida Supreme Court to give guidance as to the elements of addiction or the practice of other judges not to give such charge, addiction remains a core fact as to which the jury needs instruction "as a matter of law." Trial Tr. at 4-8, ECF No. 74.

---

[5] Between the trials in *Starbuck* and in this case, two visiting colleagues, Hon. Jed Rakoff (S.D.N.Y.) and Hon. Edward Sargus (S.D. Ohio), undertook to give the jurors in their cases guidance on this issue. I attach their charges as Appendix A to this opinion.

[6] See *infra*, at 9.

Following voir dire, I again revisited the issue in an attempt to find resolution before giving my initial instructions. Trial Tr. at 354, ECF No. 102. Plaintiff's counsel stated the parties had agreed that, subject to plaintiff's request for the full Webster's definition, no definition be given. Trial. Tr. at 354-55, ECF No. 102. PMUSA echoed its objection to any definition for the reasons set forth in their pretrial brief.

In addition, PMUSA added a request for a continuance should I intend to give an addiction definition. Trial Tr. at 356, ECF No. 102 (discussing a need to redo expert discovery). Defense counsel emphasized how giving any instruction on addiction would recast the case in a way that they had not anticipated throughout their preparation. This, they argued, would result in grave prejudice. Trial Tr. at 356, ECF No. 102.

Despite my continuing reservations about leaving the jury unguided on a potentially dispositive issue, I found this argument persuasive (indeed, compelling). As a result of the masterful oversight of the Hon. William Young (D. Mass.), federal *Engle*-progeny trials are set for two week periods months in advance, with corresponding assignments to designated visiting judges from around the country. Even so modest an alteration as a continuance in one case could affect the schedules Judge Young had painstakingly composed. In addition, given the fact that the same firms and lawyers repeatedly try *Engle*-progeny cases, a continuance could also severely impact counsel, the witnesses, and the parties.

I backed off from giving any instruction except a brief and vague statement, drawn from what Judge Sargus had told the jury in his case: "[d]etermination of whether Mrs. Berger was addicted to cigarettes containing nicotine is a factual determination for you to make, based on your common

understanding of the term 'addiction' and all the evidence before you." Trial Tr. at 432, ECF No.104; Court's Final Jury Instructions, Phase I, ECF No. 94.

Finessing the issue in this manner does not refute the accuracy of Judge Rakoff's statement, explaining why he gave a more precise and useful addicted charge in *Davis v. R.J. Reynolds Tobacco Co.,* 2014 WL 2885964, *2 (M.D. Fla.), that "the scope of class membership is critical to determining the res judicata effect of the prior *Engle* proceedings - a determination that is also clearly a question of law, as recently confirmed by the Florida Supreme Court in *Philip Morris USA, Inc. v. Douglas*[, 110 So.3d 419, 427–30 (Fla.2013), *cert. denied*, — U.S. —, 134 S. Ct. 332 (U.S. 2013).]"

If jurors do not hear from me what addicted means, they will, in all likelihood (if they have any rational basis at all) base their decision as to which of the competing experts they find more persuasive. The experts, in turn, will not have framed their views in light of an objective legal definition. They will, rather, have subjectively framed their opinions from a set of factors that best accords with their own opinion. As a result, as Judge Rakoff put it, the jury will haphazardly "pick and choose whatever definition it may prefer, and thereby [] silently determine the scope of the class without any legal guidance." *Id*.

Under these circumstances, jurors from case to case will, based on their varying subjective views and experiences, pick and choose between which side's experts' opinions seem to mesh with whatever they collectively, but subjectively come to believe "addicted" means. Individual and subjective interpretations of the term, fueled by expert testimony, will thus control the outcome –

displacing the rational weighing of evidence.[7] This turns the trial into a guessing game at its most crucial moment – when the jury reaches, or tried to reach, a unanimous decision on what is often the first and most pivotal determination before it. *Cf. Marshall v. Isthmian Lines, Inc.*, 334 F.2d 131, 138 (5th Cir. 1964) ("it was not enough to leave the whole thing within the vague contours of a general charge. . . . . [T]he Judge was obligated to advise the jury as to [the regulation's] meaning, application, significance and effect.").

Long-established and well-settled jurisprudence makes the judge duty-bound to instruct the jury fully and accurately on the pertinent substantive law. *See, e.g.*, *McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1072 (11th Cir. 1996); *McElroy by McElroy v. Firestone Tire & Rubber Co.*, 894 F.2d 1504, 1509 (11th Cir. 1990). "The granting or denial of jury instructions in diversity cases is controlled by federal laws and federal rules while the substance of those instructions is governed by the applicable state law." *Pesaplastic, C.A. v. Cincinnati Milacron Co.*, 750 F.2d 1516, 1525 (11th Cir. 1985).

This requires the judge to instruct the jury correctly and adequately on every material, controlling issue of fact in the case. *See Wilson v. Mar. Overseas Corp.*, 150 F.3d 1, 10 (1st Cir. 1998). This is true regardless of whether the lawyers request an instruction or even whether a requested instruction is flawed. *See, e.g., Norwood v. Vance,* 572 F.3d 626, 630 (9th Cir. 2009),

---

[7] *Engle*-progeny jurors invariably will have vastly varying experiences with and attitudes about cigarettes, smokers and smoking, cigarette manufacturers, individual responsibility for one's "choices," and what society should expect of and from persons who smoke or have smoked. The happenstance of one juror who successfully quit – and thus may consider himself or herself not to have been addicted, on the one hand – or a juror who has tried, but failed to quit, on the other, could lead to a different result in cases involving the same evidence, including the same expert opinion testimony. Instead of deliberating rationally and reaching an outcome based solely on the evidence and law, any jury left without an instruction on "addicted" necessarily plays TAGWOR – "The Amazing Game Without Any Rules." Harris, Mark, *Bang the Drum Slowly* (1953), *passim*.

*opinion amended on other grounds on denial of reh'g*, 591 F.3d 1062 (9th Cir. 2010); *Management. Systems Ass'n, Inc. v. McDonnell Douglas Corp.*, 762 F.2d 1161, 1177 (4th Cir. 1985); *Harville v. Anchor-Wate Co.*, 663 F.2d 598, 603 (5th Cir. 1981).

Florida law is to the same effect. Under Fla. R. Civ. P. 1470(b), trial judges are to give the pattern instructions unless the judge concludes (as is the case here) that the pattern is inadequate. In which case, the Rule requires giving "such other instruction as the judge determines necessary to accurately and sufficiently instruct the jury . . . ." The Rule embodies a former statutory mandate that it is the "duty of the several trial courts of Florida *in all cases at law* . . . . to charge the jury 'upon the law of the case.' " *Harrison v. State*, 5 So. 2d 703, 707 (Fla. 1942) (emphasis supplied).[8]

I thus agree wholeheartedly with the Florida Supreme Court's observation in *Miami Coca Cola Bottling Co. v. Mahlo,* 45 So.2d 119, 121 (Fla.1950): "We could not sanction a judge's sending a jury out to consider the issues in a controversy without some advice about principles of law applicable to their functions and the fundamental issues involved . . . ." *Accord Stark v. Smith,* 310 So. 2d 334 (Fla. 3d DCA 1975) ("The trial court has the responsibility of correctly instructing the jury regarding the law which is applicable to the facts of the case.") *(citing Farnsworth v. Tampa Electric Co.,* 57 So. 233 (Fla. 1911); *Lynch v. McGovern,* 270 So. 2d 770 (Fla. 4th DCA 1972)). As the Fifth Circuit noted in *Lind v. Aetna Cas. & Sur. Co.*, 374 F.2d 377, 380 (5th Cir. 1967) (quoting 2B Barron and Holtzoff, Federal Practice and Procedure § 1105, at 470 (Wright ed. 1961)), "[i]t is the inescapable duty of the trial judge to instruct the jurors, fully and correctly, on the applicable law

---

[8] These statements of controlling Florida law put the lie to PMUSA's claim, for which it cited no authority, that giving a charge on addicted somehow would contravene the *Erie* doctrine.

of the case, and to guide, direct and assist them toward an intelligent understanding of the legal and factual issues involved in their search for truth."

This is my job, whether the parties want me to do it or not.

Moreover, performing this duty by defining the contours of "addicted" does not, as PMUSA asserts, interfere with the jury's role as trier of fact or contravene the right to trial by jury. If crafted correctly, an instruction defining the term addicted does not interfere with the trier of fact's role as final arbiter between experts whose opinions differ, *see, e.g., Debra P. by Irene P. v. Turlington*, 730 F.2d 1405, 1412 (11th Cir. 1984), anymore than a "concurring cause" instruction does with regard to the element of legal cause.

To leave the jury without guidance on a crucial issue, as I noted during my discussions with counsel, is a like telling a bunch of Boy Scouts to take a walk in the woods, and, without map or compass, head off on their own in whatever direction they want – but to be sure to end up at the same place at the same time. That's a vain hope when boys go wandering through the woods. It's just as vain to expect that jurors will reach the correct destination if left unaware of what signposts they should follow as they head for their final destination.

Crafting a suitable instruction on addicted is not easy. Many sources offer definitions, but many of those definitions are inconsistent.[9] That fact may account for the reluctance of courts thus far to try to define addicted. For purposes of this opinion, I simply set forth the two somewhat dissimilar efforts I made in this case.

---

[9] Appendix B lists various definitions that have been submitted by the parties in *Engle*-progeny trials.

The first instruction I proposed included, along with a definition of "addiction," factors for the jurors to consider, much in the same way the traditional charge on assessing credibility gives jurors an extensive, but non-exhaustive list of factors:

> Addiction means "a compulsive need for, and use of, a habit-forming substance, known by the user to be harmful and characterized by tolerance and well-defined physiological symptoms on withdrawal."
>
> To find for the plaintiff that she has met her burden of proving that she was addicted to cigarettes containing nicotine, you must find by a preponderance of the evidence:
>
> 1. She had a compulsive need to smoke;
>
> 2. She was an habitual smoker;
>
> 3. She knew smoking was potentially harmful to her health;
>
> 4. She developed a tolerance to nicotine, which caused her to increase the number of cigarettes she smoked daily;
>
> 5. When she stopped, or sought to stop smoking, she manifested well-defined physiological symptoms resulting from the deprivation of nicotine.
>
> In determining whether the plaintiff had a compulsive need to smoke, you may consider:
>
> 1. Her age when she began smoking;
>
> 2. Any increase in the number of cigarettes smoked daily;
>
> 3. Any decrease in the number of cigarettes smoked;
>
> 4. The maximum number of cigarettes smoked daily and the period or periods of time during which she smoked that number; and
>
> 5. Whether she sought to stop smoking before finally doing so:
>
>    a. Her reason or reasons for trying to stop and finally stopping;
>
>    b. What, if any assistance, medical, pharmaceutical, or otherwise she used when trying to stop and the period or periods of time she used such assistance;
>
>    c. The period or periods of time during which she did not smoke; and

    d.  If she resumed smoking after stopping, her reason or reasons for doing so.

All counsel objected to this proposed formulation. After succumbing to counsels' objections on the basis of lack of notice and an inability to prepare for trial on the basis of the anticipated instruction, I opted simply to give the modest, and, in my view, largely insufficient statement: "Determination of whether Mrs. Berger was addicted to cigarettes containing nicotine is a factual determination for you to make, based on your common understanding of the term"addiction" and all the evidence before you." Trial Tr. at 382, ECF No. 104; Court's Final Jury Instructions, Phase I, ECF No. 94.

## Conclusion

Rather than continuing further to assemble more definitions from more sources or to seek to recraft my own earlier efforts to create a suitable definition, I will at this point simply file for the record this statement of my reasons for wanting in the past – and intending in the future – to define this core term in any *Engle*-progeny case.

I also intend by this Memorandum to put counsel on notice that, in any *Engle*-progeny case assigned to me in the future, I expect, subject to further discussion as to form and content, to charge the jury on the meaning of the term addicted.

In a word: I listened twice, regrettably, not to the law but to the lawyers who urged me to refrain from giving a charge on this crucial factual issue.

I will not again abdicate my most important judicial duty.

It is, therefore,

ORDERED THAT: the prior ruling sustaining the parties' objections to my proposed initial and final instructions on the term addiction be, and the same hereby is confirmed.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge

11

# Appendix A:
# Charges by Judges Rakoff and Sargus

*Davis v. R.J. Reynolds Tobacco Co.*, No. 3:09-cv-11447 (Rakoff, J.), ECF No. 92:

<u>That she was addicted to the nicotine in cigarettes</u>. In this regard, while you have heard different technical definitions of addiction, the one you should apply here is the ordinary dictionary definition, namely, "a compulsive need for, and use of, a habit-forming substance, characterized by tolerance and by well-defined physiological symptoms upon withdrawal."

*Harris v. R.J. Reynolds Tobacco Co.*, No. 3:09-cv-13482 (Sargus, J.), ECF No. 141:

<u>Whether Mr. Harris was addicted to the nicotine in cigarettes</u>. This is a factual determination for you the jury to make, based on your common understanding of the term "addiction" and the evidence before you.

# Appendix B:
# Sample Definitions & Sources

**National Institute on Drug Abuse (NIDA):**

Addiction is defined as a chronic, relapsing brain disease that is characterized by compulsive drug seeking and use, despite harmful consequences. It is considered a brain disease because drugs change the brain; they change its structure and how it works.


**Merriam-Webster's Dictionary:**

**addiction**: compulsive need for and use of a habit-forming substance (as heroin, nicotine, or alcohol) characterized by tolerance and by well-defined physiological symptoms upon withdrawal; *broadly*: persistent compulsive use of a substance known by the user to be harmful.


**Random House (2d. ed. 2005)**:

the state of being enslaved to something that is psychologically or physically habit-forming . . . to such an extent that its cessation causes severe trauma.


**Mosby's Dictionary of Medicine, Nursing & Health Professions (8th ed. 2009)**:

**addiction**, a compulsive, uncontrollable dependence on a chemical substance, habit, or practice to such a degree that either the means of obtaining or ceasing use may cause severe emotional, mental, or physiologic reactions.